**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LONNIE WAGGONER,** | **:** | |
| **Plaintiff,** | **:** | **Case No. 2:06-CV-250** |
| **v.** | **:** | **Judge Holschuh** |
| **OHIO CENTRAL RAILROAD, INC.,** | **:** | **Magistrate Judge Kemp** |
| **Defendant.** | **:** | |
| | **:** | |

<u>**MEMORANDUM OPINION & ORDER**</u>

Plaintiff Lonnie Waggoner filed suit under the Federal Employers' Liability Act

("FELA"), 45 U.S.C. § 51 *et seq.*, against his former employer, Defendant Ohio Central

Railroad, Inc. ("OCR"). Plaintiff's claim arises from injuries he sustained when he jumped from

a locomotive just before it collided with several standing railroad cars. This matter is currently

before the Court on Plaintiff's motion for partial summary judgment on the issue of Defendant's

liability (Record at 31), and on Defendant's motion to strike its investigative report of the

accident, which Plaintiff attached as an exhibit to his motion for summary judgment (Record at

35). For the reasons set forth below, the Court grants Plaintiff's motion for partial summary

judgment and denies Defendant's motion to strike.

**I.      Background and Procedural History**

Plaintiff Lonnie Waggoner was employed as a conductor by OCR. On Thursday, July

14, 2005, he was riding on a locomotive that was being shoved backwards by another locomotive

driven by OCR engineer Chris Holt. The locomotives had no railcars attached. Because Holt

was driving the rear locomotive and his view of the track was blocked, his movements had to be

directed by Waggoner through the use of hand signals or radio communication.  (Peterson

Report; Ex. D to Def.'s Mem. Opp'n).  Waggoner and Holt had radio contact, but Waggoner was

also intermittently using hand signals. (Holt Dep. at 33, 62; Ex. F to Pl.'s Mot. Summ. J.).

Although the speed limit was 15 mph, Holt was traveling at 28 mph.  Holt and Waggoner

were talking over the radio about the next stop they needed to make at the Cargill salt plant.

Holt apparently forgot that, earlier that day, they had detached fifteen railcars, which were

blocking the track ahead.  Holt could not see those railcars from his vantage point because the

track curved to the left.  As they rounded the curve and approached the standing railcars,

Waggoner allegedly tried to alert Holt to stop.  However, because someone else  -- possibly Holt

-- already had the radio keyed up, Waggoner's transmission attempts failed.  (Pl. Dep. at 78-80;

Ex. G to Pl.'s Mot. Summ. J.).  By the time Holt heard Waggoner shouting, "Stop! Stop! Stop!,"

it was too late.  (Holt Dep. at 95-96).  Waggoner jumped from his locomotive just before it

collided with the stationary railway cars, derailing them.  Waggoner sustained severe injuries to

his hip and lower back.  He has undergone hip surgery and extensive physical therapy.  (Pl. Dep.

at 110-113).

Waggoner filed suit against OCR, alleging that OCR failed to provide him with a

reasonably safe place to work, failed to comply with various federal safety regulations governing

railroads, and failed to comply with its own operating rules.  Specifically, Plaintiff alleges that

Holt violated 49 C.F.R. § 220.49.  That regulation provides:

> When radio communication is used in connection with the shoving
> . . . of a . . . locomotive . . . the employee directing the movement
> shall specify the distance of the movement, and the movement
> shall stop in one-half the remaining distance unless additional
> instructions are received.  If the instructions are not understood,
> the movement shall be stopped immediately and will not be

> resumed until the misunderstanding has been resolved, radio
> contact has been restored, or communication has been achieved by
> hand signals or other procedures in accordance with the operating
> rules of the railroad.

49 C.F.R. §220.49.  OCR's corresponding operating rule, Rule 421, states:

> When radios are used in connection with switching, backing or
> pushing a . . . locomotive . . . the employee directing the movement
> must keep in constant radio contact with, and give clear and
> complete instructions to the employee receiving the instructions.
>
>     1.    These instructions must specify:
>
>         (a)    The distance of the movement to be made or
>                 the sight distance available, whichever is
>                 less, in 50-foot car lengths.
>
>                        \*\*\*
>
>     2.    The movement must be stopped in one-half the
>           specified distance, unless additional instructions are
>           received.

(Ex. J to Pl.'s Mot. Summ. J.).

Plaintiff also alleges that Holt violated 49 C.F.R. § 240.305(a)(2).  That regulation
provides that it shall be unlawful to:

> Operate a locomotive or train at a speed which exceeds the
> maximum authorized limit by at least 10 miles per hour. Where
> restricted speed is in effect, only those violations of the conditional
> clause of restricted speed rules (*i.e.,* the clause that requires
> stopping within one half of the locomotive engineer's range of
> vision), or the operational equivalent thereof, which cause
> reportable accidents or incidents under part 225 of this chapter,
> shall be considered instances of failure to adhere to this section. . .

49 C.F.R. § 240.305(a)(2).  Plaintiff claims that Holt's violation of the radio rule and Holt's

operation of the train at speeds exceeding 10 mph over the authorized speed limit contributed to

the cause of the injuries Plaintiff sustained when he jumped from his locomotive before it

collided with the stationary railcars.

3

Plaintiff seeks relief pursuant to FELA and has moved for partial summary judgment on the issue of liability.  Attached to his motion, as Exhibit A, is a copy of an accident report written by OCR's Trainmaster Dennis Varian and submitted on August 1, 2005 to G.A. Fair, OCR's Manager of Transportation.  In that report, Varian concludes that the primary cause of the accident was a lack of communication between Holt and Waggoner, and that excessive speed was a contributing factor.  (Ex. A to Pl.'s Mot. Summ. J.).  Defendant has moved to strike this report from the record.  The Court turns first to Defendant's motion.

**II.      Defendant's Motion to Strike**

Defendant urges this Court to strike Varian's accident report from the record because it is not accompanied by a sworn affidavit, it constitutes inadmissible hearsay, and it is incomplete. The Court rejects each of these arguments.  While the report itself is not sworn, certified, or accompanied by a sworn affidavit, this does not prevent the Court from considering it in connection with Plaintiff's motion for partial summary judgment.  During Varian's deposition, which is attached as Exhibit C to Plaintiff's motion, Varian identified the report at issue (Ex. 1 to Varian Dep.), admitted that he prepared it, and discussed the findings contained in it.  (Varian Dep. at 16-17, 64-67; Ex. C to Pl.'s Mot. Summ. J.).   Because a deposition is a sworn statement based on personal knowledge, it is the equivalent of an affidavit.  Since Varian properly authenticated the accident report during his deposition, which is a part of the record, the Court may consider it.  See Knight v. Schulman, 102 F. Supp. 2d 867, 871 (S.D. Ohio 1999) (holding that even though exhibits were not accompanied by an affidavit, those exhibits that had been

authenticated during depositions could be considered on motion for summary judgment).[1]

Defendant next argues that because the accident report constitutes inadmissible hearsay, the Court cannot consider it.  In support of this argument, Defendant cites to <u>Jones v. Butler Metropolitan Housing Authority</u>, 40 F. App'x 131, 2002 WL 1455329 (6th Cir. 2002). In <u>Jones</u>, an employment discrimination case, the court upheld the district court's decision to strike co-workers' affidavits that consisted mainly of "hearsay, rumors, conclusory allegations and subjective beliefs." <u>Id.</u> at *3.  Defendant argues that like those affidavits, Varian's accident report and the factual findings contained in it are based on hearsay statements of witnesses to the accident, and therefore should not be considered.

<u>Jones</u>, however, is clearly distinguishable.  As Plaintiff correctly notes, the accident report and the statements contained in it are not hearsay, but admissions of a party opponent. Federal Rule of Evidence 801(d)(2) states, in pertinent part, that a statement is not hearsay if:

> (2) *Admission by party-opponent.* The statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . .

Fed. R. Evid. 801(d)(2).  The accident report is clearly being offered against OCR, the defendant in this case.  Furthermore, the statement was prepared by Varian, a servant of OCR, concerning a matter within the scope of Varian's employment, during the existence of that employment relationship.  It is therefore considered an admission by a party-opponent under Rule

---

[1] Defendant's citation to <u>Carvella v. West-WHI Columbus Northwest Partners</u>, No. 05AP-499, 2005 WL 3484604 (Ohio App. 10 Dist. Dec. 20, 2005), is inapposite not only because it interprets Ohio's Rules of Civil Procedure, but also because the accident report at issue in that case was not properly authenticated by its author during her deposition or incorporated in her affidavit.

801(d)(2)(D) and is not hearsay.  The same rule permits the Court to consider the statements made by Holt and Waggoner contained in the accident report.[2]

Finally, Defendant argues that the Court should not consider the accident report because the document is incomplete.  Defendant complains that, prior to submitting the report, Varian never had the opportunity to formally interview Plaintiff, and that the conclusions and findings contained in the report are therefore incomplete.  The Court notes, however, that the report does, in fact, contain statements Plaintiff made about the accident.  In any event, Defendant's argument concerning completeness goes to the weight of the evidence, not its admissibility.

For the reasons set forth above, Defendant's motion to strike is denied.

## III.     Plaintiff's Motion for Partial Summary Judgment

The Court turns now to Plaintiff's motion for partial summary judgment on the issue of liability.  Plaintiff argues that, even viewing the evidence in a light most favorable to Defendant, OCR employee Chris Holt violated two federal regulations and those violations contributed, at least in part, to the collision that caused Plaintiff's injuries.  Plaintiff maintains that because these violations constitute negligence *per se* under FELA, and because there is no genuine issue of material fact regarding causation, he is entitled to summary judgment on the issue of liability. The Court agrees.

---

[2]  Because the accident report is not hearsay, there is no need for the Court to address Defendant's alternative argument, *i.e.*, that Federal Rule of Evidence 803(6), the hearsay exception for business records, does not apply because that Rule requires the record to be made "at or near" the time of the accident, and the accident report was not prepared until 17 days after the accident.

### A.    Defendant's Surreply

Before turning to the merits of Plaintiff's motion, the Court must address one threshold matter. After Plaintiff's motion for summary judgment was fully briefed, Defendant filed a surreply, reasserting essentially the same arguments presented in its memorandum in opposition. Local rules permit the filing of a motion, a memorandum in opposition, and a reply.  However, "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown."  S.D. Ohio Civ. R. 7.2(b).  Defendant did not seek leave of court prior to filing the surreply and has not demonstrated the requisite good cause.  The Court therefore orders the surreply stricken from the record.

### B.    Standard of Review

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  Lashlee v. Sumner,  570 F.2d 107, 111 (6th Cir. 1978).  The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law.  Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986);  Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001).  Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (emphasis in original).  A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  See also Anderson, 477

8

U.S. at 248.  An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248.  <u>See also</u> <u>Leary</u>, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322.  The nonmoving party must demonstrate that "there is a genuine issue for trial," and  "cannot rest on her pleadings."  <u>Hall v. Tollett</u>, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  <u>Anderson</u>, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  <u>Moore v. Phillip Morris Companies, Inc.</u>, 8 F.3d 335, 340 (6th Cir. 1993).  The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  <u>Anderson</u>, 477 U.S. at 251-52; <u>Lansing Dairy, Inc.</u>, 39 F.3d at 1347.

9

**C.     Relevant Law**

The Federal Employers' Liability Act was enacted by Congress in 1908, in part, to address "the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety."  Sinkler v. Missouri Pac. R.R. Co., 356 U.S. 326, 329 (1958).  Congress intended to provide "liberal recovery for injured workers." Kernan v. American Dredging Co., 355 U.S. 426, 432 (1958) (citing Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 508-510 (1957)).  However, as the Supreme Court recently noted in Norfolk Southern Railway Co. v. Sorrell, 127 S.Ct. 799 (2007):

> Unlike a typical workers' compensation scheme, which provides relief without regard to fault, Section 1 of FELA provides a statutory cause of action sounding in negligence:
>> "[E]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . ."

Id. at 805 (quoting 45 U.S.C. § 51).

In order to recover under FELA, Plaintiff must prove:

> [1] that he was injured while in the scope of his employment, [2] which employment is in furtherance of the railroad's interstate transportation business, [3] that his employer was negligent, and [4] that his employer's negligence played some part in causing the injury for which compensation is sought under FELA.

Green v. River Terminal Ry. Co., 763 F.2d 805, 808 (6th Cir. 1985) (citing Sowards v. Chesapeake & Ohio Ry. Co., 580 F.2d 713, 714 (4th Cir. 1978)).  It appears to be undisputed that Plaintiff was injured while in the scope of his employment which was in furtherance of OCR's interstate transportation business.  At issue is whether OCR, through its engineer, Chris Holt, was negligent and whether that negligence played some part in causing Plaintiff's injury.

10

Federal common law determines what constitutes negligence under FELA.  See Urie v. Thompson, 337 U.S. 163, 174 (1949).  "To prevail on a FELA claim, a plaintiff must 'prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990) (internal quotation omitted).

### 1.       Duty and Breach

With respect to the elements of duty and breach, Plaintiff argues that Holt's violations of 49 C.F.R. § 220.49 and 49 C.F.R. § 240.305(a)(2) constitute negligence *per se*.  Defendant concedes that the Sixth Circuit has held that violations of *statutes* like the Safety Appliance Act ("SAA") and the Boiler Inspection Act ("BIA"), which regulate railroads, may constitute negligence *per se* under FELA.  See Mickler v. Nimishillen & Tuscarawas Ry. Co., 13 F.3d 184, 188 (6th Cir. 1993). Defendant argues, however, that the Sixth Circuit has not expressly extended that reasoning to violations of *regulations*.  In Gorder v. Grand Trunk Western Railroad, Inc., No. 05-CV-70380-DT, 2006 WL 2796159, at *6-7 (E.D. Mich. Sept. 27, 2006), the court noted that although the Second Circuit, in Morant v. Long Island Railroad, 66 F.3d 518, 523 (2d Cir. 1995), and the Seventh Circuit, in Walden v. Illinois Central Gulf Railroad, 975 F.2d 361, 364 (7th Cir. 1992), both held that violations of federal railroad regulations constitute negligence *per se*, the Sixth Circuit has not so ruled.

Walden is significant because it involved 49 C.F.R. § 220.49, one of the regulations allegedly violated by Holt.  The Seventh Circuit specifically held, "[i]n a FELA action, the violation of a statute or regulation, such as Section 220.49, automatically constitutes breach of the employer's duty and negligence *per se* and will result in liability if the violation contributed in fact to the plaintiff's injury."  975 F.2d at 364 (citing Kernan v. American Dredging Co., 355

U.S. 426, 432-33 (1958)).[3]  While the Sixth Circuit has not expressly adopted Walden, it did cite

Walden with approval in Colonna v. Wheeling & Lake Erie Railway Co., No. 96-3039, 1997 WL

705092 (6th Cir. Nov. 5, 1997).

In Colonna, plaintiff filed suit under FELA, alleging that he was injured because his

employer negligently failed to inspect, maintain and repair a railroad switch.  Federal regulations

required the railroad to inspect each switch on a monthly basis and to keep records of such

inspections.  With respect to plaintiff's claim that the district court erred in failing to instruct the

jury that a violation of the regulations could be considered as evidence of negligence, the Sixth

Circuit stated:

> There is no doubt that a violation of certain federal laws may
> constitute negligence *per se* under FELA, and that liability will
> attach if the violation contributed in fact to the plaintiff's injury.
> Kernan v. American Dredging Co., 355 U.S. 426, 430-33 (1958)
> (holding that a violation of the Safety Appliances Act, 45 U.S.C.
> §§ 1-16, or the Boiler Inspection Act, 45 U.S.C. §§ 22-34, may
> create liability under FELA without regard to negligence); Mickler
> v. Nimishillen & Tuscarawas Ry. Co., 13 F.3d 184, 188 (6th
> Cir.1993) (same); see also Walden v. Illinois Central Gulf R.R.,
> 975 F.2d 361, 364 (7th Cir.1992) (holding that a violation of 49
> C.F.R. § 220.49 constitutes negligence per se).

1997 WL 705092, at *2.

---

[3]  In Kernan, a seaman was killed when a kerosene lamp on the deck of his tugboat
ignited vapors from an accumulation of oil on the surface of the Schuylkill River.  His family
sued to recover under the Jones Act, 46 U.S.C. § 688, which created a federal right of action for
the wrongful death of a seaman based on FELA.  355 U.S. at 429.  At issue was whether the
violation of a navigation rule promulgated by the Coast Guard, requiring lamps to be kept at
least eight feet off the water, was sufficient to impose liability in the absence of any showing of
negligence.  See id. at 430-31.  Analogizing the Jones Act to the SAA and the BIA, the Court
held that because the regulation was violated and the violation contributed to the death of the
seaman, the employer was liable even though there was no showing of negligence.  Id. at 431-33.

In Colonna, the Sixth Circuit held that because there was no evidence that the railroad had, in fact, violated the regulation at issue, the district court did not err in refusing to give the requested jury instruction.  Id. at *2-3.  The Court therefore did not reach the issue of whether a violation of a railroad regulation constitutes negligence *per se*.  However, there is no reason to believe that, if presented with the issue, the Sixth Circuit would not join the other courts which have held that violation of a railroad safety regulation constitutes negligence *per se* and subjects the employer to liability if the violation played some part in the plaintiff's injury.

At least one other district court within the Sixth Circuit has already held that a violation of 49 C.F.R. § 240.305(a), the other regulation allegedly violated by Holt, constitutes negligence *per se*.  In Correll v. Consolidated Rail Corporation, 266 F. Supp. 2d 711 (N.D. Ohio 2003), the court held that:

> violation of § 240.305(a) constitutes negligence *per se*, because "it is well-settled that the FELA requires a finding of negligence *per se* when there has been a violation of a safety statute specifically aimed at the railroad industry." Ries v. National Railroad Passenger Corp., 960 F.2d 1156, 1159 (3d Cir.1992). Thus, under the FELA, "conduct is deemed negligent *per se* if it violates a statute or regulation and if it 'contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent.'" Morant v. Long Island R.R., 66 F.3d 518, 522 (2nd Cir.1995) (quoting Kernan v. American Dredging Co., 355 U.S. 426, 433, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958)).

266 F. Supp. 2d at 714.

Based on the above-cited case law, this Court finds that violations of safety regulations promulgated by the Federal Railroad Administration, such as 49 C.F.R. § 220.49 and 49 C.F.R. § 240.305(a)(2), constitute negligence *per se* and satisfy the elements of duty and breach.  The Court turns then to the question of whether there is a genuine issue of material fact as to whether

Holt violated either or both of these regulations.  Viewing the evidence in a light most favorable to the nonmoving party, the Court finds no genuine issue of material fact as to either alleged violation.

It is undisputed that Holt operated the locomotive in excess of 10 miles per hour over the authorized speed limit in violation of 49 C.F.R. § 240.305(a)(2).  According to Varian, the maximum authorized speed for this particular stretch of track was 15 mph.  (Ex. A to Pl.'s Mot. Summ. J.).  Immediately prior to the collision, Holt reached a top speed of 28 mph, 13 mph over the speed limit.  The train was still moving at 19-22 mph when the collision occurred.  (Id.).  Varian found that Holt had violated Operating Rule 40, which prohibits employees from exceeding authorized speed limits.  (Ex. J to Pl.'s Mot. Summ. J.).  Consistent with Varian's report, Defendant admitted in its answers to interrogatories that it determined that Holt had violated Operating Rule 40.  (Ex. E to Pl.'s Mot. Summ. J.).  Moreover, based on  the violation of Rule 40 and the violation of 49 C.F.R. § 240.305(a)(2), Defendant revoked Holt's engineer certification for a period of one month.  (Ex. B to Pl.'s Mot. Summ. J.).  Colin Fulk, Plaintiff's expert witness, also concluded that Holt had violated Rule 40 and § 240.305(a)(2).  (Ex. I to Pl.'s Mot. Summ. J.).  Since Defendant offers absolutely no evidence to rebut Plaintiff's claim that Holt violated 49 C.F.R. § 240.305(a)(2), the Court finds no genuine issue of material fact concerning this alleged violation.

Nor is there any genuine issue of material fact concerning the alleged violation of 49 C.F.R. § 220.49.  As noted above, that regulation governs radio communication used in connection with the shoving of a locomotive.  It provides that:

> the employee directing the movement shall specify the distance of
> the movement, and the movement shall stop in one-half the

14

> remaining distance unless additional instructions are received.  If
> the instructions are not understood, the movement shall be stopped
> immediately and will not be resumed until the misunderstanding
> has been resolved, radio contact has been restored, or
> communication has been achieved by hand signals or other
> procedures in accordance with the operating rules of the railroad.

49 C.F.R. § 220.49.  Plaintiff's expert witness, Colin Fulk, concluded that because Holt's

instructions were not complete, Holt violated Operating Rule 421 and 49 C.F.R. § 220.49 when

he continued the shoving movement without completed radio communication. (Ex. I to Pl.'s

Mot. Summ. J.).

        Likewise, Varian previously concluded in his investigative report that Holt violated Rule

421. (Ex. A to Pl.'s Mot. Summ. J.).[4]  Nevertheless, relying on the report of its expert witness,

Foster Peterson, Defendant now argues that the radio rule set forth in 49 C.F.R. § 220.49 does

not apply because Holt and Plaintiff were not using radio communications to control the shove

movement, but were instead using hand signals.  (Ex. D to Def.'s Mem. Opp'n).[5]

        In the Court's view, Peterson's expert witness report carries very little weight.  Not only

is it completely contrary to the position previously taken by OCR, but it is also inconsistent with

the sworn testimony of Holt and Plaintiff.

        It is undisputed that Plaintiff gave Holt a hand signal to commence the shove move.

_____

        [4]  Varian also testified that because Rule 421 is substantially similar to 49 C.F.R. §
220.49, a violation of that rule constitutes a violation of the regulation.  (Varian Dep. at 69-70).

        [5]  Operating Rule 12-D states that hand signals may be used instead of radio
communications "when conditions exist for continuous direct visual contact between the
employee controlling the locomotive and the signal of the employee directing the movement."
Peterson concluded that because Holt maintained direct visual contact with Plaintiff throughout
the move, there was no need to use radio communications.  (Ex. D to Def.'s Mem. Opp'n).

(Holt Dep. at 62).  It is also undisputed that immediately before the collision, Plaintiff and Holt were engaged in radio communications concerning the upcoming move they needed to make at the Cargill salt plant.  But, according to Peterson, since there was no radio communication concerning the shove movement itself, the radio rule does not apply.  (Ex. D to Def.'s Mem. Opp'n).

Admittedly, there is some dispute concerning Plaintiff's efforts to alert Holt, via radio, of the impending collision.  Plaintiff testified that as they approached the standing railcars and he noticed that Holt was "throttling up pretty fast," he radioed Holt that they were 15 car lengths away from the tie or coupling.  Holt, however, did not slow down.  Plaintiff then noticed that the red light on his radio was on.  This indicated that, most likely, Holt was still holding down the button on his own radio and had not heard what Plaintiff said.  Plaintiff then tried to establish visual contact with Holt, but Holt was busy looking at his clipboard.  Plaintiff testified that he then indicated, via radio, that they were 10 car lengths away and then 5 car lengths away.  He then screamed "Stop!"  When he realized that Holt was not looking at him and still had not heard his commands, he jumped from the train.  (Pl. Dep. at 79-81).

Holt testified that, immediately before the collision, he and Plaintiff were busy talking about the next stop at the Cargill salt plant.  He claims that the only radio transmission he heard concerning the shove was when Plaintiff yelled "Stop! Stop! Stop!" immediately prior to impact. (Holt Dep. at 43).  Holt admitted, however, that there were many reasons why he might not have heard Plaintiff's earlier transmissions.  (Id. at 49-50).

In any event, in light of other sworn testimony, the question concerning Plaintiff's earlier attempts to alert Holt, via radio, of the impending collision is largely irrelevant to the question of

16

whether the shove was being directed by radio communications such that Rule 421 and 49

C.F.R. § 220.49 apply.  At his deposition, Holt explicitly testified that even though he could see

Plaintiff, he was relying, at least in part, on radio communication with Plaintiff during the shove.

(Holt Dep. at 95).  He also testified that there should have been better clarification, via the radio,

concerning a specified distance for the shove.  (Id. at 35-36).  After the accident, Holt conceded

that he should not have continued the shove without asking for a specified distance.  In a letter to

OCR officials, Holt stated, "I did not ask what the distance was and I was wrong."  (Ex. D to

Pl.'s Mot. Summ. J.).  Dennis Varian testified that Holt told him that they were using radio

communication as opposed to hand signals to direct the movement of the train.  (Varian Dep. at

53-54).  Based on Holt's statement, Varian concluded in his investigative report that

"[c]ommunication between Lonnie and Chris about the location of the standing train was not

clear or complete, which is a violation of the radio rules."[6]  Moreover, Defendant admitted in its

answers to interrogatories that it had determined that Holt had violated Operating Rule 421 when

he continued shoving the locomotive without any radio communication from Plaintiff concerning

the specific distance to be moved.  (Ex. E to Pl's Mot. Summ. J.).

In light of all of this evidence, there is simply no factual basis for Peterson's conclusion

that the radio rule is inapplicable.  Nor is there any genuine issue of material fact concerning

whether that rule was, in fact, violated.  Defendant's belated attempts to distance itself from its

previous findings in order to create a factual dispute are simply insufficient to defeat Plaintiff's

motion.

---

[6]  Again, Defendant urges the Court not to rely on Varian's investigative report because it
is "incomplete" and contains inadmissible hearsay.  The Court, however, has denied Defendant's
motion to strike that report.

In summary, there is no genuine issue of material fact concerning whether Holt violated 49 C.F.R. §220.49 and 49 C.F.R. §240.305(a)(2), and the violation of these regulations constitutes negligence *per se*. The Court turns then to the question of whether the violation of either of these regulations contributed to Plaintiff's injury, thereby subjecting Defendant to liability.

### 2. Causation

Defendant's expert, Foster Peterson, concluded with respect to the issue of causation, that:

> The ultimate cause of this collision was the failure of Conductor Waggoner to observe standing cars on the Lower Yard Lead and instruct Engineer Holt to stop prior to colliding with the cars. Mr. Waggoner was the member of the movement who had an unobstructed view of the standing cars. In my opinion Mr. Waggoner did not pay attention to the track ahead.
>
> Mr. Holt did not operate the locomotives in accordance with the speed limit of Restricted Speed not to exceed 15 mph on the Lower Yard Lead; however, this did not contribute to the causation of the accident. Mr. Holt testified that he could continuously see Mr. Waggoner's hand signals during the move . . . and made the move as directed. The operation is also supported by the event recorder data and audio recording.

(Ex. D to Def.'s Mem. Opp'n).

If, in fact, Plaintiff's own negligence were the sole cause of his injury, he would not be able to recover under FELA. However, if Plaintiff's negligence merely contributed to the accident, recovery would not be barred. The relevant statute states, "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." 45 U.S.C. § 53.

18

The Sixth Circuit has held that "under FELA, an employee's contributory negligence is not a defense to liability, and an employer will therefore be liable if its negligence played any role in causing the plaintiff's injury." Toth v. Grand Trunk R.R., 306 F.3d 335, 351 (6th Cir. 2002). See also Rogers, 352 U.S. at 506 (employer will be liable if its "negligence played any part, even the slightest, in producing the injury or death for which damages are sought."). Based on the evidence presented, no reasonable jury could find that Holt's violations of 49 C.F.R. §220.49 and 49 C.F.R. §240.305(a)(2) played no part in producing Plaintiff's injuries.

In fact, Varian's own investigative report concluded that "[t]he *primary cause* of the accident was failure to comply with Rule 421 – the lack of proper communication pertaining to the location of the standing cut of cars of the part of both the conductor and the engineer." (Ex. A to Pl.'s Mot. Summ. J.) (emphasis added). Varian found that if Holt had complied with Rule 421 and stopped the movement of the locomotive, "it is highly probable that the collision would not have occurred." (Id.). Moreover, Defendant admitted in its answers to interrogatories that the violation of Rule 421 was a "contributing cause of the injury complained of." (Ex. E to Pl.'s Mot. Summ. J.).

Plaintiff's expert, Colin Fulk, likewise concluded:

> This accident was the result of unauthorized movement of locomotives. Engineer Holt had no authority to continue the backing movement of the locomotives without additional communication from Mr. Waggoner. Radio communication was being used to control this move. When the use of hand signals stopped, the control of this movement fell on the radio signals. . . . Had Mr. Holt been in compliance with railroad rules and federal regulations, this accident would have never happened, and the train would have been stopped, well short of the collision.

(Ex. I to Pl.'s Mot. Summ. J.).

19

The bottom line is that even if Plaintiff was not as attentive as he should have been, the train would not have been moving at all if Holt had complied with Rule 421.  Clearly then, the violation of this rule played some part in producing Plaintiff's injuries.  If the train were standing still, Plaintiff would have had no reason to jump.

Holt's speeding violation also contributed to Plaintiff's injuries.  Defendant's expert, Peterson, admits that Holt was traveling faster than the authorized speed limit.  He nevertheless concludes that this violation did not contribute to the cause of the accident, allegedly because "Holt testified that he could continuously see Mr. Waggoner's hand signals during the move . . . and made the move as directed."  (Ex. D to Def.'s Mem. Opp'n).  Unfortunately, as Plaintiff correctly points out, there is no such testimony in the record.  There is no evidence that any hand signals were given after Plaintiff gave the initial hand signal to commence the shove.  In fact, Holt testified that he was not concerned about any obstacles on the tracks because he was in radio contact with Plaintiff and was relying, at least in part, on that radio contact.  (Holt Dep. at 94-95).  Moreover, Plaintiff testified that his attempts to establish eye contact with Holt failed because Holt was bent over his clipboard and was not watching him.  (Pl. Dep. at 79-81).

Even if Holt had testified that he was relying solely on Plaintiff's hand signals, there is still no logical reason to believe that speed did not contribute to the cause of Plaintiff's injuries.  Peterson makes no effort to explain the basis for his conclusion.  Plaintiff's expert, Colin Fulk, concluded that "Holt's violation of the speed limit also shortened the time he and his conductor had to assess the danger and to react by slowing the train.  Had the speed been in compliance with instructions, this could have been an incident involving *no more than a hard coupling.  No injury.  No derailment.*" (Ex. I to Pl.'s Mot. Summ. J.) (emphasis added).  More importantly,

Varian also concluded that excessive speed was a contributing factor and that "had Chris complied with the posted speed limit, it is possible the collision would not have happened, or, in the least, been as severe as it was." (Ex. A to Pl.'s Mot. Summ. J.). Certainly, the speed with which the locomotives were approaching the standing railcars factored into Plaintiff's decision to jump from the train. Finally, Defendant admitted in its answers to interrogatories that it had determined that Holt's violation of Rule 40, the rule governing speed limits, was a "contributing cause of the injury complained of." (Ex. E to Pl.'s Mot. Summ. J.).

While the Court is not permitted to weigh the evidence in ruling on a motion for summary judgment, neither is it required to accept an expert witness's conclusions that are not supported by the record. In the Court's view, Peterson's report falls into this category. Particularly in light of the fact that Defendant itself previously concluded that violations of the radio rule and the speed limit contributed to the accident, Peterson's report is simply insufficient to create any genuine issue of material fact with respect to causation.

For the reasons stated above, the Court finds that Plaintiff is entitled to summary judgment on the issue of Defendant's liability under FELA. The Court makes no determination, however, of whether Plaintiff's own negligence also contributed to his injuries. A jury will have to determine the question of contributory negligence along with the issue of damages.

## IV.    Conclusion

The Court **DENIES** Defendant's motion to strike the investigative report of the accident. (Record at 35).

The Court **GRANTS** Plaintiff's motion for summary judgment on the issue of Defendant's liability under FELA. (Record at 31). Because Defendant's surreply (Record at 42)

does not comply with S.D. Ohio Civ. R. 7.2(b), it is **STRICKEN** from the record.

**IT IS SO ORDERED.**


Date: November 27, 2007                          **/s/ John D. Holschuh**
                                                 John D. Holschuh, Judge
                                                 United States District Court