IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LONNIE D. WAGGONER,** | : | |
| Plaintiff, | : | Case No. 2:06-CV-250 |
| v. | : | Judge Holschuh |
| **OHIO CENTRAL RAILROAD, INC.,** | : | Magistrate Judge Kemp |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Lonnie Waggoner filed suit under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.,* seeking to recover for injuries he sustained while working as a conductor for Ohio Central Railroad, Inc. ("OCR"). This matter is currently before the Court on Plaintiff's two motions in limine (Record at 55, 57), Defendant's motion in limine (Record at 58), Defendant's motion to exclude opinions contained in Dr. Malcolm Cohen's supplemental report or, in the alternative, motion for leave to name a rebuttal expert (Record at 75), and on a variety of other evidentiary issues raised in the Final Pretrial Order. A jury trial limited solely to the issue of damages is scheduled for April 28, 2008.

**I.	Discretionary Standard**

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the court to rule on issues pertaining to

evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial.  See Indiana Ins. Co. v. Gen. Elec. Co., 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997)).  Pretrial orders also often save the parties time and cost in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence."  Koch v. Koch Indus., Inc., 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); accord Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975).  A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible.  Indiana Ins. Co., 326 F. Supp. 2d at 846; Koch, 2 F. Supp. 2d at 1388.  If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial.  Indiana Ins. Co., 326 F. Supp. 2d at 846.  Ultimately, whether a motion in limine is granted or denied is a matter left to the sound discretion of the court.  See Hesling v. CSX Transp., Inc., 396 F.3d 632, 643-44 (5th Cir. 2005) (citing United States v. Sharpe, 193 F.3d 852, 867 (5th Cir. 1999); Buford v. Howe, 10 F.3d 1184, 1188 (5th Cir. 1994)).

**II.    Plaintiff's Motions in Limine**

    **A.    Collateral Source Rule**

The Court turns first to Plaintiff's motion to exclude evidence that he has received any income from collateral sources.  "The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing damages owed to a plaintiff by the amount of recovery the plaintiff

receives from sources that are collateral to the tortfeasor." Jackson v. City of Cookeville, 31 F.3d 1354, 1359 (6th Cir.1994). The rationale for the rule, as explained by the Tenth Circuit in Green v. Denver & Rio Grande Western Railroad Co., 59 F.3d 1029 (10th Cir. 1995) is two-fold:

> First, public policy favors giving the plaintiff a double recovery rather than allowing a wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent source. FDIC v. United Pac. Ins. Co., 20 F.3d 1070, 1083 (10th Cir.1994). Second, by assuring a plaintiff's payments from a collateral source will not be reduced by a subsequent judgment, the rule encourages the maintenance of insurance. Quinones v. Pennsylvania Gen. Ins. Co., 804 F.2d 1167, 1171 (10th Cir.1986).

Green, 59 F.3d at 1032. As a general rule, evidence that a plaintiff has received compensation from a collateral source is inadmissible because of the substantial risk that a jury will reduce an award of damages if it learns that the plaintiff has already received partial compensation. Id. at 1033.

Two categories of income from collateral sources remain at issue here: (1) disability benefits paid to Plaintiff under the Railroad Retirement Act; and (2) payment of Plaintiff's medical bills by Plaintiff's current employer's insurance company.

### 1. Railroad Retirement Benefits

Plaintiff first seeks to exclude evidence that he received approximately six months of Railroad Retirement Board Sickness Benefits before he began his current employment. In support of his motion, Plaintiff cites to Eichel v. New York Central Railroad Co,, 375 U.S. 253 (1963). In Eichel, a FELA case, the defendant railroad sought to introduce evidence of disability payments made to the plaintiff under the Railroad Retirement Act. Defendant wanted to use this evidence to impeach plaintiff's testimony about his motive for not returning to work and the permanency of his injuries. The Supreme Court held that the trial court properly excluded this

3

evidence because any probative value the evidence might have with respect to the claim of malingering was clearly outweighed by the danger that the jury would misuse the information. Id. at 255.

Citing McGrath v. Consolidated Rail Corp., 136 F.3d 838, 840 (1st Cir. 1998), Defendant argues that Eichel does not require the *per se* exclusion of collateral source evidence in FELA cases. In McGrath, the First Circuit held that the district court did not abuse its discretion in admitting evidence of disability payments where the defendant had offered the evidence to show plaintiff's lack of motivation for returning to work. Notably, the district court had issued several cautionary instructions advising the jury that it could consider the evidence only as it related to malingering. See McGrath, 136 F.3d at 841.

Plaintiff contends that McGrath is inapposite because, in this case, Defendant has no evidence that Plaintiff was malingering or could have returned to work any earlier than he did. Even if Defendant had such evidence, Eichel, in this Court's view, prohibits Defendant from introducing it. The Sixth Circuit has relied heavily on the Supreme Court's holding in Eichel in excluding evidence of collateral benefits. See, e.g., Wilcox v. Clinchfield R.R. Co., 747 F.2d 1059, 1061-62 (6th Cir. 1984) (citing Eichel as "reflecting a strong policy against the use of such collateral source evidence" in FELA cases, and holding that it was reversible error for the trial court to tell the jury that plaintiff had received payment for medical expenses and "last [sic] working time"); Toth v. Grand Trunk R.R., 306 F.3d 335, 354 (6th Cir. 2002) (citing Eichel and finding that it was error for the district court to inform the jury of alternate sources of compensation). See also Green, 59 F.3d at 1032-33 (holding that Eichel "compels the conclusion that the collateral source rule prohibits admission of RRA disability benefits in a

4

FELA case."). Pursuant to the holding in Eichel, the Court concludes that evidence that Plaintiff received benefits through the Railroad Retirement Act is inadmissible at trial.

Defendant also argues that since it contributed to the Railroad Retirement fund at issue, the benefits should not be considered to be a collateral source. The Court rejects this argument. In Eichel, the Supreme Court noted that benefits received under the Railroad Retirement Act are akin to Social Security payments and are not directly attributable to the contributions of the employer. Therefore, those benefits cannot be used to offset damages caused by the employer's negligence. 375 U.S. at 254. As such, Railroad Retirement benefits are deemed to be from a collateral source.

Under the circumstances presented here, the Court finds that the probative value of evidence that Plaintiff received benefits under the Railroad Retirement Act is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. The Court therefore **GRANTS** Plaintiff's first motion in limine with respect to this issue.

    2.    **Medical Bills**

The parties agree that Plaintiff's medical bills were paid by three different sources: (1) Plaintiff; (2) insurance provided by Plaintiff's current employer; and (3) Defendant.[1] Plaintiff's motion in limine seeks to exclude evidence of income from collateral sources including "health insurance payments." The only "collateral source" that paid any of Plaintiff's medical bills is Plaintiff's current employer's insurance company. Again, Eichel appears to govern this issue.

---

[1] During a telephone conference call on April 11, 2008, counsel informed the Court that the parties have not yet been able to fully determine which medical bills were paid by which entities. The admissibility of Plaintiff's medical bills and the subject of setoff for bills paid directly by Defendant will be addressed later in this opinion.

The Court therefore **GRANTS** Plaintiff's motion in limine and prohibits Defendant from introducing evidence that Plaintiff's current employer's insurance company paid certain medical bills.

  **B.**  **Comparative Negligence**

By separate motion, Plaintiff argues that since the Court has already determined that Plaintiff's own negligence, if any, is irrelevant to the issue of damages, Defendant should not be permitted to suggest or imply that Plaintiff was partially responsible for his own injuries. Defendant has not opposed this motion, impliedly conceding that the introduction of such evidence would be improper. The Court therefore **GRANTS** Plaintiff's motion to exclude evidence of comparative negligence.

**III.**  **Defendant's Motion in Limine**

  **A.**  **Congressional Intent re: FELA**

Defendant asks the Court to exclude any argument by Plaintiff's counsel concerning Congress's intent in enacting FELA. Since Plaintiff states that he does not intend to refer to Congress's intent, the Court need not address this issue.

  **B.**  **Gross Wage Loss**

Defendant also seeks to exclude evidence of Plaintiff's gross wage loss. The parties agree that Plaintiff's recovery for lost wages is limited to after-tax income. Defendant maintains that evidence of Plaintiff's gross wage loss will only inflate his damages and confuse the jury. Plaintiff maintains, however, that his economic expert should be able to refer to Plaintiff's gross wages as part of a PowerPoint presentation analyzing Plaintiff's total economic loss.

In the Court's view, any probative value evidence of Plaintiff's gross wage loss may have is substantially outweighed by the danger of unfair prejudice and confusion of the issues.  See Fed. R. Evid. 403.  Moreover, it appears that Dr. Cohen's PowerPoint presentation can easily be modified to eliminate these risks.  The Court therefore **GRANTS** Defendant's motion to exclude evidence of Plaintiff's gross wage loss.

C. **Financial Hardship**

Defendant next seeks to exclude evidence of Plaintiff's financial hardship, and evidence concerning Plaintiff's wife and children, including the fact that Plaintiff's wife had a baby shortly after the accident occurred.  Defendant notes that the family members have no claims in this lawsuit.  According to Defendant, evidence of financial hardship and the effect of the accident on Plaintiff's family will unfairly arouse sympathy.

Plaintiff appears to concede that evidence of financial hardship and family circumstances offered for the sole purpose of appealing to the sympathies of the jury would be inadmissible. He argues, however, that in his case, such evidence is relevant to his diagnosis of post-traumatic stress disorder.  He contends that Defendant opened the door to testimony about the financial toll Plaintiff's injuries have taken on his family by repeatedly questioning Dr. J. Edward Black, Plaintiff's treating psychologist, about Plaintiff's family and finances.  Plaintiff also expects that Mark Vincken, the first person to reach Plaintiff after the accident, will testify that Plaintiff immediately started talking about how he wouldn't have any income now and that he had a baby on the way.  Plaintiff notes that he did not make this statement to Vincken with the thought of later arousing sympathy in a jury.  He simply said what was running through his mind as he lay waiting for the ambulance.

The Court intends to **RESERVE RULING** on this issue. Plaintiff's counsel is instructed to avoid mentioning financial hardship and family circumstances during opening arguments, and to alert the Court and opposing counsel prior to introducing any evidence of financial hardship and family circumstances so that the Court can rule on the admissibility of such evidence at sidebar in the context of the trial.

D.  **Relative Financial Conditions of Parties**

Pursuant to Federal Rule of Evidence 403, Defendant asks the Court to exclude any evidence comparing Defendant's financial condition to Plaintiff's financial condition. Plaintiff has not responded to this argument, but the Court agrees with Defendant that the probative value of any evidence concerning the disparity of the financial conditions of the parties is substantially outweighed by the danger of unfair prejudice. The Court therefore **GRANTS** Defendant's motion.

E.  **FELA as Sole Remedy**

Defendant next seeks to exclude any argument that FELA is Plaintiff's only possible remedy and that he is not entitled to Workers' Compensation benefits. Plaintiff states that he does not intend to make any such argument but reserves the right to revisit the issue if the jury expresses confusion concerning the availability of Workers' Compensation benefits. Under these circumstances, the Court need not address this issue at this time.

F.  **Insurance**

Defendant asks the Court to exclude any reference to the fact that Defendant may have liability insurance coverage for this particular loss. The Court need not address this issue since Plaintiff agrees that any such reference would be improper.

### G. "CSX Conductor Duties" DVD

Defendant also sought to exclude the introduction of a DVD entitled "CSX Conductor Duties." In light of the fact that Defendant has stipulated that Plaintiff is no longer able to perform his duties as a conductor, Plaintiff has agreed to withdraw this exhibit. Therefore, the Court need not address Defendant's argument.

### IV. Defendant's Motion to Exclude Opinions Contained in Dr. Malcolm Cohen's Supplemental Report or, in the alternative, Motion for Leave to Name a Rebuttal Expert

Plaintiff's expert witness on the issue of economic damages is Dr. Malcolm Cohen. Defendant first deposed Dr. Cohen on June 19, 2007. At that time, Dr. Cohen indicated that the only change he anticipated making to his report prior to trial was to update Plaintiff's actual lost earnings. Dr. Cohen prepared a supplemental report dated January 24, 2008. Defendant conducted a supplemental deposition based on that report on March 25, 2008.

At the March 25, 2008 deposition, Dr. Cohen admitted that he had received no new information since his original report. Nevertheless, according to Defendant, Dr. Cohen's supplemental report includes "new information and assumptions on Plaintiff's future tax deductions, and a new methodology for calculating the discount rate and wage loss." (Def.'s Mot. at 3). Defendant argues that these new assumptions and new methodology, all of which were available when Dr. Cohen prepared his original report, directly impact Plaintiff's projected future wage loss. Because the supplemental report is based on this new information, and because Dr. Cohen has not provided the source material used in the supplemental report, Defendant asks the Court to exclude the opinions contained in it. In the alternative, Defendant requests leave to name a rebuttal economist to assist in explaining these changes to the jury.

Plaintiff argues that Defendant's motion is untimely. Defendant has had the supplemental report, which clearly states the difference in the source materials used, since January 28, 2008. No objections concerning its contents are noted in the Final Pretrial Order. Moreover, Defendant raised no objections to the supplemental report at the Final Pretrial Conference held on February 29, 2008. Defendant simply expressed its desire to re-depose Dr. Cohen concerning the report's contents. Plaintiff also denies that the supplemental report involves any significant change in methodology. Dr. Cohen simply used data that he was not aware of when he wrote his initial report. This new information allowed him to calculate a more accurate discount rate. As to the new source material used, Plaintiff notes that Dr. Cohen repeatedly offered, during the deposition, to retrieve the documents from an adjoining office so that they could be made part of the record, but Defendant's attorney did not give him the opportunity to do so.

The Court agrees that Defendant's motion is untimely. Defendant has known since January 28, 2008 that Dr. Cohen used different source materials in his supplemental report, yet waited until April 3, 2008 to voice any objection. Moreover, Defendant's motion lacks merit. Although Dr. Cohen used updated source materials, he testified at his deposition that his methodology for calculating the discount rate did not change. (Cohen 3/28/08 Dep. at 35-6). Under these circumstances, the Court finds no prejudice in allowing Dr. Cohen to testify concerning the opinions reached in his supplemental report. Moreover, the deadline for naming a rebuttal expert was May 1, 2007, nearly one year ago; allowing Defendant to name an expert at this late date would surely result in a delay of the trial. For these reasons, the Court **DENIES** Defendant's motion to exclude opinions contained in Dr. Cohen's supplemental report, and

Defendant's alternative motion for leave to name a rebuttal expert.

## V. Other Outstanding Evidentiary Issues

In the Final Pretrial Order, the parties noted several objections to other evidence. Some of those objections have now been more fully briefed.

### A. Photographs of Accident Scene

Defendant objects to the introduction of 13 photographs of the train derailment, arguing that they are irrelevant to the issue of damages and would serve only to inflame the jury. During a telephone conference call held on April 11, 2008, Plaintiff's counsel argued that the photographs are essential to an understanding of Plaintiff's post-traumatic stress disorder. When counsel for Defendant countered that the photographs are cumulative and prejudicial, Plaintiff's counsel offered to cut the number of photographs in half.

In the Court's view, the photographs may well be useful in helping the jury understand the origins of Plaintiff's alleged post-traumatic stress disorder. In addition, because the photographs are only of the railcars and not of Plaintiff's injuries, prejudice to the Defendant appears to be minimal. The Court therefore **OVERRULES** Defendant's objection as to relevancy and prejudice. The Court agrees, however, that the number of photographs is excessive and cumulative. Therefore, Plaintiff is directed to substantially reduce the number of photographs presented.

### B. Dr. Cohen's Power Point Presentation

Defendant also objects to the inclusion of "Scenario 2" in Dr. Cohen's PowerPoint presentation on the issue of economic damages. That hypothetical scenario presumes that Plaintiff will be able to earn only $8.00 an hour, the projected likely wage for a person with his

education and experience, for the rest of his life. Defendant notes, however, that Plaintiff is currently earning $13.00 an hour as a machine operator at a plastics plant. Defendant argues that because "Scenario 2" is inconsistent with the current facts, it is misleading and prejudicial and should be excluded.

Plaintiff argues that although he is currently earning $13.00 an hour, he is in pain every night from standing on his feet and has difficulty sleeping. He is forcing himself to work in pain so that he can better support his family. He questions how long he will be able to endure. It is possible that, in the future, he will have to accept a lower paying job to accommodate his disability. Plaintiff contends that the jury should be able to decide whether it is reasonable to expect him to continue working in pain for the rest of his life. If the jury determines that he should continue working at his present job in order to earn a higher wage, it may choose to increase his award for pain and suffering. On the other hand, if the jury determines that he should not be expected to work in pain, it can increase his award for lost wages and decrease his award for pain and suffering.

Defendant correctly notes, however, that the question of whether Plaintiff will, at some point in the future, have to take a lower-paying job to accommodate his disability is purely speculative. It is impossible to predict at what point, if ever, Plaintiff will have to quit his current job. Likewise, it would be impossible for a jury to determine future wage loss based on this hypothetical situation. The Court therefore **SUSTAINS** Defendant's objection to "Scenario 2" of Dr. Cohen's PowerPoint presentation. The jury is, of course, free to take the pain and suffering Plaintiff is experiencing at his current job into consideration when determining an appropriate damage award.

C.  Medical Bills: Admissibility and Setoff

In the Final Pretrial Order, Defendant noted an objection to the admissibility of Plaintiff's medical bills, which total $70,382.43. As noted above, those bills were paid by: (1) Plaintiff; (2) Plaintiff's current employer's insurance company; and (3) Defendant. The parties, however, are still trying to determine who paid which bills. The parties agree that Defendant is entitled to a setoff for all expenses it paid directly, but is not entitled a setoff for the bills paid by Plaintiff or by Plaintiff's current employer's insurance company.[2] Although the question of whether the medical bills are admissible is separate from the question of whether Defendant is entitled to a setoff, the issues are somewhat interrelated.

Plaintiff is clearly entitled to recover his own out-of-pocket medical expenses. Therefore, the medical bills he paid himself are admissible. As to the medical bills paid through Plaintiff's current employer's insurance policy, there is no little or no risk of double recovery by Plaintiff if those medical bills are presented; that insurance policy very likely contains a standard subrogation provision.[3]

As to the medical bills paid directly by Defendant, the setoff issue could be handled in various ways. In order to eliminate any risk of double recovery, the Court could prohibit

---

[2] "In any action brought against any such common carrier . . . such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." 45 U.S.C. § 55.

[3] Although the medical bills paid by Plaintiff's current employer's insurance policy are themselves admissible, evidence of *payment* of those bills is inadmissible under the collateral source rule.

13

Plaintiff from presenting evidence of any medical bills already paid by Defendant. Another possibility would be for the Court to allow Plaintiff to introduce the bills already paid by Defendant, allow Defendant to present evidence of payment, and then instruct the jury to apply this setoff to the total verdict. In the alternative, Defendant could simply move the Court, post-verdict, for an order reducing the damages awarded by the appropriate amount. In light of the fact that the parties have not yet sorted out who paid which medical bills, this last option appears to be the most viable.

In the Court's view, under the circumstances presented here, it will be best to allow Plaintiff to present evidence of all of his medical bills. Defendant can then file a post-trial motion concerning the appropriate amount of a setoff for those medical bills it paid directly.

    **D.**    **Expert Witnesses Briggs and Growick**

On March 25, 2008, Plaintiff renewed his objections to the admission of the testimony of Defendant's expert witnesses Dr. Briggs and Dr. Growick. At the Final Pretrial Conference, held on February 29, 2008, counsel for Defendant promised to remedy the deficiencies in the Rule 26(a)(2)(B) expert witness reports "within a few days." Plaintiff's counsel, however, did not receive anything until March 21, 2008, and still had not been provided with: (1) a list of cases in which Dr. Briggs has testified; (2) a list of what documents Dr. Growick reviewed in formulating his opinions; or (3) the six attachments referenced in Growick's report. Plaintiff maintains that he has been prejudiced by the submission of the "extremely late and still deficient reports." With less than 30 days until trial, Plaintiff has yet to depose these expert witnesses.

During the April 11, 2008 telephone conference call, counsel for Defendant stated that Defendant would not be calling Dr. Briggs as a witness. She agreed to immediately fax the

information missing from Dr. Growick's report to Plaintiff's counsel.  Plaintiff's counsel planned to review that information to determine whether he still needed to depose Dr. Growick. In another telephone conference call, held on April 15, 2008, counsel for Plaintiff confirmed that he did receive the missing information and does not intend to depose Dr. Growick.  In light of these recent developments, Plaintiff's objections to the testimony of Dr. Briggs and Dr. Growick are **DENIED AS MOOT**.

      **E.**      **Plaintiff's Objections to Defendant's Exhibits**

Plaintiff has raised numerous objections to Defendant's exhibits, mostly on grounds of hearsay.

      **1.**      **Exhibits A, B and C**

Exhibits A, B, and C are the reports prepared by Defendant's testifying expert witnesses. Plaintiff argues that while the witnesses may certainly refer to their reports for the purpose of refreshing their recollection, the reports themselves constitute hearsay and are therefore inadmissible.

Defendant argues that because it is likely that Plaintiff's counsel will cross-examine the experts on some portions of the reports, Federal Rule of Evidence 106 requires the admission of the complete reports.  Rule 106, however, is inapplicable.  It states:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Fed. R. Evid. 106.  Unless Plaintiff physically introduces into evidence a written copy of some portion of Defendant's expert witness reports, this rule does not apply.  Simply cross-examining

15

an expert witness on the content of a written report does not trigger this rule. The Court agrees that the reports themselves constitute hearsay and are inadmissible. Plaintiff's objection is therefore **SUSTAINED**.

### 2. Exhibit D

Exhibit D consists of Plaintiff's medical records. Plaintiff again argues that these records are inadmissible hearsay. Defendant argues that the medical records are admissible under Federal Rule of Evidence 803(6) as a record of a regularly conducted business activity.

As long as a proper foundation is laid through "the testimony of the custodian or other qualified witness" see Fed. R. Evid. 803(6), medical records are generally admissible as a record of a regularly conducted business activity. In this case, however, because the parties have not yet provided the Court with a copy of the medical records, the Court will **RESERVE RULING** on this issue.

### 3. Exhibit E

Exhibit E is an invoice from "Fortune's Boot Shop" indicating that on February 5, 2006, Ohio Central Railroad purchased work boots for Mr. Waggoner and several other employees. Plaintiff argues that this invoice is irrelevant because, as of that date, no physician had released him to return to work in any capacity. Defendant argues, however, that Plaintiff's decision to order work boots is relevant to his state of mind and evidence of his intention to return to work in some capacity. The Court finds that this invoice is probative with respect to those issues. Plaintiff's objection regarding relevancy is therefore **OVERRULED**.

### 4. Exhibit F

Exhibit F is a physician's report, completed by Dr. Bruce French, releasing Plaintiff to

16

return to work on July 11, 2006 with various permanent restrictions, including "no jumping from moving machinery." Plaintiff argues that since Defendant has stipulated that Plaintiff is not capable of returning to work as a conductor, Defendant's purpose in introducing this exhibit appears to be suspect. Plaintiff also argues that it constitutes hearsay.

Defendant, however, argues that the report is relevant to Defendant's understanding of Plaintiff's ability to return to work in any capacity. The Court agrees. As to the hearsay objections, Defendant argues that the report is admissible as a record of a regularly conducted business activity under Federal Rule of Evidence 803(6). Again, assuming that a proper foundation is laid, the Court agrees. The Court therefore **OVERRULES** Plaintiff's objection.

### 5. Exhibits G and H

Exhibits G and H are letters written to Plaintiff on August 7, 2006 and September 11, 2006 by William Strawn, President of OCR, in response to Dr. French's report on Plaintiff's ability to return to work (Exhibit F). The letters concern the need for a physical examination before Plaintiff would be allowed to return to work on light or restricted duty.

Plaintiff argues that these letters are hearsay, offered to show that he was ready to return to light duty work by August of 2006. Plaintiff further argues that the letters are misleading because his treating psychologist had not yet released him to return to work in any capacity at that time. Finally, Plaintiff argues that the introduction of these letters constitutes inadmissible evidence of settlement discussions under Federal Rule of Evidence 408(a). According to Plaintiff, Strawn told him that any job offer would come only after this lawsuit was settled.

Defendant counters that the letters are not hearsay because they are not being offered to show that Plaintiff was ready to return to work on a particular date, but rather to show that

17

Defendant was willing to work with Plaintiff to accommodate his restrictions. Defendant further argues that because the letters do not expressly condition a job offer on settlement of the case, they are not inadmissible evidence of settlement discussions.

To the extent Defendant intends to offer these letters to show that it was willing to work with Plaintiff to accommodate his restrictions, the Court agrees that the letters are not hearsay. Their significance lies in the fact that the statements were made. The credibility of the statements is immaterial. The Court also rejects Plaintiff's argument that the letters are inadmissible evidence of settlement discussions. They contain absolutely no reference to this lawsuit.

Nevertheless, the Court agrees that the letters are somewhat misleading and could confuse the jury. In the letter, Strawn admits that he cannot read Dr. French's handwriting in the report, yet "based on the contents of the document," he interprets it "as an indication that you may be ready to return to work on light and/or restricted duty." Moreover, even if Dr. French did release Plaintiff to return to work on restricted duty, Plaintiff had not yet been released to return to work by his treating psychologist. Therefore, the jury could jump to the conclusion that Plaintiff was malingering when, in fact, that was not the case. It is possible that the probative value of these letters is substantially outweighed by the danger of unfair prejudice and confusion of the issues. However, because the Court can better assess this in the context of the trial, the Court will **RESERVE RULING** on Plaintiff's objections to these two exhibits.

## VI.   Conclusion

For the reasons stated above, Plaintiff's motions in limine (Record at 55, 57) are both **GRANTED**. Defendant's motion in limine (Record at 58) is **GRANTED IN PART and**

**DENIED IN PART.** Defendant's motion to exclude opinions contained in Dr. Malcolm Cohen's supplemental report or, in the alternative, motion for leave to name a rebuttal expert (Record at 75) is **DENIED**.

**IT IS SO ORDERED.**

Date: April 21, 2008                                  **/s/ John D. Holschuh**
                                                                        John D. Holschuh, Judge
                                                                        United States District Court